IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DESTINY KENNEDY,<br>On behalf of herself and all<br>Other Georgia citizens similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VGW HOLDINGS LIMITED, VGW MALTA LIMITED, VGW LUCKYLAND INC., and VGW GP LIMITED,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.<br>1:24-cv-02184-TWT |

**DEFENDANTS VGW LUCKYLAND AND VGW GP'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 3

I. The Parties .......... 3

II. To Play the Games, Users Must Agree to VGW's Terms, Which Include Arbitration Agreements (Subject to Opt-Out) .......... 4

III. Plaintiff Opted Out Under the November 2023 Terms But Subsequently Accepted the December 2023 Terms and Did Not Opt Out of Arbitration .......... 6

ARGUMENT .......... 7

CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)....................................................................................2, 7

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)........................................................................................7

*Cellairis Franchise, Inc. v. Duarte*,
No. 2:15-cv-101-WCO, 2015 WL 11422299 (N.D. Ga. July 20, 2015)..............9

*Cloudera, Inc. v. Databricks, Inc.*,
No. 1:21-cv-108-ELR, 2021 WL 1846578 (N.D. Ga. Feb. 18, 2021) .................9

*Cochran v. Penn Mut. Life Ins. Co.*,
No. 1:19-cv-564-JPB, 2020 WL 13328617 (N.D. Ga. 2020)...............................7

*Costa v. Experian Info. Sols. Inc.*,
No. 5:23-cv-170-GAP-PRL, 2023 WL 5434683 (M.D. Fla. Aug. 8, 2023) ........9

*Costa v. Postmates Inc.*,
No. 19-cv-3046-JST, 2019 WL 13207628 (N.D. Cal. Oct. 3, 2019) .................10

*Doe v. VGW Malta, Ltd.*,
No. 1:23-cv-3226-TWT, 2023 WL 8234650 (N.D. Ga. Nov. 28, 2023) .............2

*Fed. Nat'l Mortg. Ass'n v. Prowant*,
209 F. Supp. 3d 1295 (N.D. Ga. 2016)................................................................9

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000)..............................................................................................7

*Hart v. Charter Commc'n, Inc.*,
No. 8:17-cv-556-SB, 2021 WL 4893353 (C.D. Cal. Sept. 9, 2021) ..................10

*Mumin v. Uber Techs., Inc.*,
239 F. Supp. 3d 507 (E.D.N.Y. 2017) .................................................................9

*Rangel v. Lowe's Home Ctrs., LLC*,
No. 5:21-cv-422-JWH-SPx, 2021 WL 4839575 (C.D. Cal. June 24, 2021)......10

*Samadi v. MBNA Am. Bank, N.A.*,
178 F. App'x 863 (11th Cir. 2006) ....................7

**Statutes**

9 U.S.C. § 2 ....................2

9 U.S.C. § 4 ....................7

Defendants VGW Luckyland, Inc. ("VGW Luckyland") and VGW GP Ltd. ("VGW GP") (collectively, "VGW"), respectfully submit this memorandum of law in support of their motion to compel arbitration of Plaintiff's claims against them pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ("FAA").[1]

## PRELIMINARY STATEMENT

This is one of ***ten*** lawsuits that Plaintiff's counsel has filed against VGW and their affiliates in roughly one year, and ***the third in this District alone***. In each case, the plaintiff has speciously claimed that VGW's online casino-themed social games are unlawful "gambling," and that the plaintiff is entitled to recover all money spent by players of the games in a particular state. Some cases, including the related case brought by Plaintiff's counsel captioned *Fair Gaming Advocates Georgia, Inc. v. VGW Holdings Ltd.*, No. 1:24-cv-00901-TWT, have been brought by companies that were formed for the purpose of bringing the lawsuits and attempting to avoid the arbitration agreements in VGW's terms of service (the "Terms"); others, like this

---

[1] VGW Luckyland and VGW GP, together with VGW Malta Ltd. and VGW Holdings Ltd. (collectively, "VGW Group"), have also filed a motion to dismiss the complaint for lack of personal jurisdiction or, in the alternative, to transfer Plaintiff's claims in part and otherwise dismiss the complaint pursuant to the mandatory Delaware and Malta forum selection clauses in VGW Group's terms of service. Should the Court find that it lacks personal jurisdiction over VGW Group, this motion would be rendered moot. However, if the Court finds that it possesses jurisdiction over VGW Group, the claims against VGW Luckyland and VGW GP should be compelled to arbitration for the reasons stated herein or, in the alternative, transferred and dismissed for the reasons stated in the motion to dismiss or transfer.

one, have been brought by players individually or as putative class actions without regard for the arbitration agreements and class action waivers in the Terms. None has succeeded. In fact, Plaintiff's counsel withdrew the first putative class action he brought in Georgia on behalf of an anonymous player, after this Court granted VGW Luckyland's and VGW Malta's motion to compel arbitration. *Doe v. VGW Malta, Ltd.*, No. 1:23-CV-3226-TWT, 2023 WL 8234650, at *2 (N.D. Ga. Nov. 28, 2023).

This case is materially identical to *Doe*. The only difference is that Plaintiff here identified herself and claims to have opted out of the arbitration agreements.

But that is not correct as to VGW Luckyland and VGW GP. Plaintiff opted out of arbitration under ***earlier*** versions of VGW Luckyland's and VGW GP's Terms but then accepted later versions of the Terms in January 2024, ***nearly two months before filing this lawsuit***, and ***Plaintiff did not opt out of the arbitration agreements in those Terms***. Plaintiff may dispute that her acceptance and failure to opt out of arbitration under the later Terms binds her to arbitrate her claims against VGW, but that is a question of arbitrability that the parties delegated to the arbitrator.

The parties' arbitration agreement is "valid, irrevocable, and enforceable," 9 U.S.C. § 2, and must be "rigorously enforce[d] . . . according to [its] terms," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). Therefore, Plaintiff's claims against VGW Luckyland and VGW GP must be compelled to arbitration.

## FACTUAL BACKGROUND

### I. The Parties

VGW specializes in the development and publication of free-to-play online casino-themed social games, including on platforms called *Luckyland Slots* and *Global Poker*. *See* Declaration of Caterina Cavallaro in Support of Defendants' Motion to Compel Arbitration, Dismiss or Transfer ("Cavallaro Decl.") ¶ 2. Plaintiff alleges she registered accounts with, played, and spent money on *Luckyland Slots* and *Global Poker* between September 7 and December 3, 2023. *See* Compl. ¶¶ 10-11. Plaintiff alleges that the games are illegal "gambling" under Georgia law. *Id*. ¶¶ 106-11. The games are not gambling, but that issue is not relevant to this motion.

Plaintiff purports to bring claims on behalf of herself and a class of all other Georgia residents who made purchases playing *Luckyland Slots* and *Global Poker* (among other games) during the six-month period of September 7, 2023, to March 7, 2024. *Id*. ¶¶ 98-105. Plaintiff claims that she is authorized to bring this action against VGW in court because she opted out of arbitration under the Terms. *Id*. ¶ 12.

As discussed below, that is not correct: Plaintiff opted out of the arbitration clauses in the November 1, 2023, Terms, but she accepted later versions of the Terms in January 2024, ***nearly two months before she filed this action*** in March 2024, and ***never opted out of arbitration under those later sets of Terms***. *See infra* § III.

## II. To Play the Games, Users Must Agree to VGW's Terms, Which Include Arbitration Agreements (Subject to Opt-Out)

Before a user can play any games, VGW requires the user to register an account. *See* Cavallaro Decl. ¶ 10. As part of the account registration process, a user must affirmatively accept the Luckyland Slots Terms of Service and Global Poker Terms and Conditions, as applicable. *Id*. ¶ 11. Users cannot register or play any of the games unless they affirmatively accept the Terms and all updates. *Id.* ¶¶ 11-12.

VGW does not understand Plaintiff to dispute that she accepted the Terms. In fact, Plaintiff tacitly concedes she accepted the Terms because she alleges she opted out of the arbitration clauses "in accordance with the Terms." Compl. ¶ 12. In any event, VGW's records confirm Plaintiff accepted the November 1, 2023, Terms, opted out of arbitration in the November 1, 2023, Terms in late November 2023, ***and then accepted the December 2023 Terms in January 2024 without opting out of arbitration under those later Terms***. *See* Cavallaro Decl. ¶¶ 23-25, 36-38.

The December 2023 Luckyland Slots Terms of Service and Global Poker Terms and Conditions (hereafter, collectively, the Terms) are identical in all material respects. The Terms include a clear and conspicuous warning at the top that states:

> These Terms [] form a binding legal agreement between you and us and apply to your use of any of our Games or our Platform in any way, through any electronic device (web, mobile, tablet or any other device).
>
> PLEASE NOTE THAT THESE TERMS [] INCLUDE A PROVISION WAIVING THE RIGHT TO PURSUE ANY CLASS,

> GROUP OR REPRESENTATIVE CLAIM AND REQUIRING YOU TO PURSUE PAST, PENDING, AND FUTURE DISPUTES BETWEEN YOU AND US THROUGH INDIVIDUAL ARBITRATION UNLESS YOU OPT OUT WITHIN THE SPECIFIED TIME FRAME [30 DAYS FROM ACCEPTANCE OF THE TERMS]. SEE CLAUSE 24 FOR MORE INFORMATION.

*Id*., Exs. B and E at 1.[2]

The Terms include an arbitration agreement, which appears in a separate standalone section titled "**DISPUTE RESOLUTION AND AGREEMENT TO ARBITRATE ON AN INDIVIDUAL BASIS**." *Id.* § 24.

The arbitration agreement states:

> **We Both Agree To Arbitrate**. By agreeing to these Terms of Service, and to the extent permitted by applicable law, you and VGW Group each and both agree to resolve any Disputes – including any Dispute concerning the enforceability, validity, scope or severability of this agreement to arbitrate – through final and binding arbitration as discussed herein.

*Id.*§ 24.2. The arbitration agreement broadly defines "Disputes" as "all past, present and future disputes, claims or causes of action between you and VGW Group arising out of or relating to these Terms [], the Platform and Games, the formation of these Terms [] or any other dispute between you and VGW Group . . ., whether arising prior to or after your agreement to [the Terms]." *Id*. § 24. The arbitration agreement further states that it "shall be construed under and be subject to the [FAA]," that JAMS "will administer the arbitration under its Streamlined Rules in effect at the

[2] Capitalization and bold emphases in original unless otherwise noted.

time arbitration is sought ('JAMS Rules')," and that the "arbitration will proceed on an individual basis and will be handled by a sole arbitrator[.]" *Id.* §§ 24, 24.4.

The Terms also contain an express class action waiver, which bars Plaintiff from arbitrating or litigating any dispute against VGW as a class action. *Id*. § 24.7. Plaintiff has brought this putative class action in violation of her class action waiver. VGW Group intends to oppose class certification and will seek dismissal of the putative class claims pursuant to the class waiver and for failure to meet the requirements of a class action under Rule 23, after this motion is resolved.

## III. Plaintiff Opted Out Under the November 2023 Terms But Subsequently Accepted the December 2023 Terms and Did Not Opt Out of Arbitration

Plaintiff alleges that she opted out of arbitration under the November 1, 2023, Luckyland Terms on November 20, 2023, and that she opted out under the November 1, 2023, Global Poker Terms on November 29, 2023. *See* Compl. ¶ 12.

VGW's business records reflect these opt-outs under the November 2023 Terms. *See* Cavallaro Decl. ¶¶ 23, 36. However, VGW's business records also reflect that Plaintiff later accepted the December 2023 versions of the Terms in January 2024. *Id*. ¶¶ 24, 37. The opt-out provision under the December 2023 Terms sets forth the following procedure for arbitration opt-outs to be valid:

> **Opt-out of Agreement to Arbitrate**. You may decline this agreement to arbitrate by contacting [the designated VGW opt-out email address] within 30 days of first accepting these Terms [] and stating that you (include your first and last name, email address and postal address) decline this arbitration agreement. By opting out of

> the agreement to arbitrate, you will not be precluded from playing the Games, but you and VGW Group will not be permitted to invoke the mutual agreement to arbitrate to resolve Disputes under the Terms [] otherwise provided herein.

*Id.* § 24.3. VGW Luckyland and VGW GP have no record of receiving an opt-out notice from Plaintiff under the December 2023 Terms. Cavallaro Decl. ¶¶ 25, 38.

**ARGUMENT**

The FAA reflects a "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344-46 (2011), and requires courts to compel arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue," 9 U.S.C. § 4; *see also Italian Colors*, 570 U.S. at 233 ("[C]ourts must 'rigorously enforce' arbitration agreements according to their terms."). As the party opposing arbitration, Plaintiff bears the burden of disproving she agreed to arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000); *Cochran v. Penn Mut. Life Ins. Co*., No. 1:19-CV-00564-JPB, 2020 WL 13328617, at *6 (N.D. Ga. 2020), *aff'd*, 35 F.4th 1310 (11th Cir. 2022) (same). In evaluating a motion to compel arbitration, courts may consider declarations. *Samadi v. MBNA Am. Bank, N.A.*, 178 F. App'x 863, 866 (11th Cir. 2006).

Plaintiff agreed to arbitration with VGW under the JAMS Rules and delegated to the arbitrator all issues regarding the arbitrability of her claims, including the enforceability of the arbitration agreement as to her claims in this case. *See supra* §§ II, III. While Plaintiff claims she opted out of arbitration under the November

2023 Terms, VGW's business records confirm that Plaintiff subsequently accepted the December 2023 Terms in January 2024, nearly two months before she filed this lawsuit, and ***she did not opt out of arbitration under those Terms***. *See supra* § III.

While Plaintiff may dispute whether her opt-outs under the November 2023 Terms were sufficient to opt out of arbitration under the December 2023 Terms that she later accepted, that is a question of arbitrability for the arbitrator, not this Court.

Indeed, the arbitration agreement expressly states that the parties agree to "resolve any Disputes—including any Dispute concerning the ***enforceability***, validity, scope or severability of this agreement to arbitrate—through final and binding arbitration[.]" Cavallaro Decl., Exs. B and E, § 24.2 (emphasis added).

Moreover, the arbitration agreement incorporates the JAMS Rules, which independently delegate to the arbitrator all questions of arbitrability. *See* JAMS Streamlined Rule 8(b) ("Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.").[3] Courts in this District have repeatedly held, consistent with Eleventh Circuit precedent, that incorporation of JAMS Rules is "clear and unmistakable evidence that the parties

---

[3] https://www.jamsadr.com/rules-streamlined-arbitration/#Rule-8.

agreed to arbitrate questions of arbitrability." *Fed. Nat'l Mortg. Ass'n v. Prowant*, 209 F. Supp. 3d 1295, 1310 (N.D. Ga. 2016); *see also Cloudera, Inc. v. Databricks, Inc.*, No. 1:21-CV-00108-ELR, 2021 WL 1846578, at *4 (N.D. Ga. Feb. 18, 2021).

Any dispute about the validity or effect of Plaintiff's earlier purported opt outs is irrelevant to this motion. Whether Plaintiff's opt-outs under the November 2023 Terms were sufficient to opt her out of arbitration under the December 2023 Terms that she subsequently accepted is a Dispute that the parties delegated to the arbitrator. *See Cellairis Franchise, Inc. v. Duarte*, No. 2:15-cv-00101-WCO, 2015 WL 11422299, at *6 (N.D. Ga. July 20, 2015) ("Because the parties expressly delegated that authority to the arbitrator . . ., the court finds that ***all*** of plaintiffs' claims must be first presented in arbitration; the arbitrator must determine whether plaintiffs may bring their claims for injunctive and equitable relief under the opt-out provision in the arbitration clause.") (emphasis in original); *Costa v. Experian Info. Sols. Inc.*, No. 5:23-cv-170-GAP-PRL, 2023 WL 5434683, at *2-4 (M.D. Fla. Aug. 8, 2023) (rejecting argument that claims were not subject to arbitration based upon attempt to opt out of changes to arbitration agreement because "the arbitration agreement [was] valid, and it clearly delegate[d] issues of arbitrability to the arbitrator"), *report and recommendation adopted*, 2023 WL 5432296 (M.D. Fla. Aug. 23, 2023); *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 524-25 (E.D.N.Y. 2017) (plaintiff's "argument[] that he expressed his intent to opt out of a prior arbitral clause before

agreeing to the December 2015 Agreement is irrelevant" because the parties "intended to delegate questions of arbitrability to an arbitrator, and therefore any challenge to the scope, enforceability, or applicability of the Arbitration Provision is for an arbitrator to resolve"); *Costa v. Postmates Inc.*, No. 19-cv-03046-JST, 2019 WL 13207628, at *3 (N.D. Cal. Oct. 3, 2019) (granting motion to compel arbitration because whether plaintiffs opted out was an arbitrability question delegated to the arbitrator); *Hart v. Charter Commc'n, Inc.*, No. 8:17-cv-00556-SB (RAOx), 2021 WL 4893353, at *5 (C.D. Cal. Sept. 9, 2021) (granting motion to compel arbitration because "even if [p]laintiffs' 2017 attempts to opt out of the 2016 and 2017 [contract]'s arbitration provisions were successful, the existence and validity of the 2014 [contract], which contains an arbitrability delegation clause . . . ., requires this [c]ourt to refrain from deciding the gateway arbitrability issues presented by the purported opt outs."); *Rangel v. Lowe's Home Ctrs., LLC*, No. 5:21-cv-00422-JWH-SPx, 2021 WL 4839575, at *3 (C.D. Cal. June 24, 2021) ("Because the 2006 Agreement delegates the threshold question of arbitrability to the arbitrator, the arbitrator must determine whether this dispute is arbitrable (i.e., whether the 2017 Agreement and [plaintiff's] opt-out superseded the 2006 Agreement).").

Accordingly, Plaintiff's claims against VGW Luckyland and VGW GP must be compelled to arbitration, pursuant to the delegation clauses in the arbitration agreements and the incorporated JAMS Rules.

## CONCLUSION

For the reasons set forth above, this Court should compel Plaintiff's claims against VGW Luckyland and VGW GP to arbitration and stay all further proceedings against them in this Court pending arbitration, pursuant to the FAA.

Dated: November 14, 2024

Respectfully submitted,

*/s/ Michael A. Sullivan*
Michael A. Sullivan
Georgia Bar No. 691431
Nicole Archambault
Georgia Bar No. 222686
FINCH McCRANIE, LLP
229 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30303
Tel: (404) 658-9070
msullivan@finchmccranie.com
narchambault@finchmccranie.com

*Attorneys for Defendants VGW Holdings Ltd., VGW Malta Ltd., VGW Luckyland Inc., and VGW GP Ltd.*

OF COUNSEL:

Gregory D. Beaman (*pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142
Tel: (212) 506-5000
gbeaman@orrick.com

Behnam Dayanim (*pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Tel: (202) 339-8613
bdayanim@orrick.com

**RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE**

Under Local Rule 7.1D of the United States District Court for the Northern District of Georgia, the undersigned certifies that this submission to the Court was computer-processed, double-spaced between lines, and prepared with 14-point Times New Roman font.

*/s/ Michael A. Sullivan*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of November 2024, the foregoing document was served by efiling using the Court's electronic filing system, which will automatically forward a copy to counsel of record in this matter.

*/s/ Michael A. Sullivan*
Michael A. Sullivan
Georgia Bar No. 691431
Nicole Archambault
Georgia Bar No. 222686
FINCH McCRANIE, LLP
229 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30303
Tel: (404) 658-9070
msullivan@finchmccranie.com
narchambault@finchmccranie.com

*Attorneys for Defendants VGW Holdings Ltd., VGW Malta Ltd., VGW Luckyland Inc., and VGW GP Ltd.*