IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DESTINY KENNEDY, on behalf of
herself and all others similarly
situated,

     Plaintiff,

       v.

VGW Holdings Limited, et al.,

     Defendants.

CIVIL ACTION FILE
NO. 1:24-CV-2184-TWT

**OPINION AND ORDER**

This is a putative class action. It is before the Court on Plaintiff Destiny
Kennedy's Motion to Certify Class [Doc. 21]; Defendants VGP Holdings
Limited ("VGW Holdings"), VGW Malta Limited ("VGW Malta"), VGW
Luckyland Inc. ("VGW Luckyland"), and VGW GP Limited's ("VGW GP")
Motion to Dismiss [Doc. 27]; Defendants VGW Luckyland and VGW GP's
Motion to Compel Arbitration [Doc. 28]; and Plaintiff Kennedy's Motion for
Leave to Amend [Doc. 37]. For the reasons set forth below, Defendants VGW
Holdings, VGW Malta, VGW Luckyland, and VGW GP's Motion to Dismiss
[Doc. 27] is GRANTED. Defendants VGW Luckyland and VGW GP's Motion to
Compel Arbitration [Doc. 28] is GRANTED. The Plaintiff's Motion for Leave to
Amend [Doc. 37] is DENIED. The Plaintiff 's Motion to Certify Class [Doc. 21]
is DENIED as moot.

# I.    Background[1]

This case arises from the Defendants' operation of certain casino-themed online games. (Compl. ¶¶ 1–2 [Doc. 1-2].) Plaintiff Kennedy lost approximately $1,150 gambling on the casino-themed websites operated by Defendants VGW Malta, VGW Luckyland, and VGW GP. [2] (*Id.* ¶ 11) The Plaintiff has additionally named Defendant VGW Holdings as a fourth defendant, alleging that the first three Defendants are subsidiaries and mere agents and alter egos of VGW Holdings. (*Id.* ¶¶ 6, 15). The Defendants' websites allow individuals to play online versions of slot machines, blackjack, poker, and roulette, (*id.* ¶¶ 16, 18), and they allow individuals to wager both a purely virtual currency (via "Gold Coins") as well as real money (via "Sweep Coins"), (*id.* ¶¶ 20, 25–26, 43–50). Players can obtain Sweep Coins by (1) purchasing packages of Gold Coins, which include Sweep Coins as a bonus, (2) logging into their accounts at least once per day to receive a "Daily Bonus" of Sweep Coins, (3) entering contests on certain Facebook pages, and (4) sending requests by mail to VGW Malta, VGW Luckyland, and VGW GP. (*Id.* ¶ 72.) Once players acquire a sufficient balance of Sweep Coins, they can redeem those coins for cash or gift cards of equivalent value. (*Id.* ¶ 69.)

---

[1] The Court accepts the facts as alleged in the Initial Complaint as true for purposes of the present motions. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

[2] VGW Malta operates "Chumba Casino"; VGW Luckyland operates "Luckyland Slots"; and VGW GP operates "Global Poker." (Compl. ¶ 37).

According to the Plaintiff, the Defendants structure their Sweep Coins in the aforementioned way in an attempt to claim that their websites are not gambling operations but merely an opportunity to enter into "sweepstakes." (*Id.* ¶¶ 65–67.) However, the Plaintiff alleges that the Defendants' websites are in fact illegal gambling operations and seeks to recover monetary damages on behalf of herself and a putative class under O.C.G.A. § 13-8-3. (*Id.* ¶ 107–11.) That section states:

> (a) Gambling contracts are void; and all evidences of debt, except negotiable instruments in the hands of holders in due course or encumbrances or liens on property, executed upon a gambling consideration, are void in the hands of any person.

> (b) Money paid or property delivered upon a gambling consideration may be recovered from the winner by the loser by institution of an action for the same within six months after the loss and, after the expiration of that time, by institution of an action by any person, at any time within four years, for the joint use of himself and the educational fund of the county.

O.C.G.A. § 13-8-3.

The Plaintiff originally filed this action in state court, but the Defendants removed it to federal court shortly thereafter. (*See generally* Not. of Removal [Doc. 1].) Since then, this Court has denied the Plaintiff's Motion to Remand. (Oct. 15, 2024, Op. & Order, at 8 [Doc. 18].) Now pending before the Court are several motions. The Defendants seek dismissal under Rule 12(b)(2) for lack of personal jurisdiction or, alternatively, for (a) transfer of the claims against VGW Luckyland to the District of Delaware and (b) dismissal of the claims against VGW Malta and VGW GP for forum non

3

conveniens. Defendants VGW Luckyland and VGW GP have also separately filed a motion to compel arbitration. The Plaintiff has filed motions for class certification and leave to amend her Complaint.

## II.    Discussion

### A. The Operative Complaint

Ordinarily, the filing of an amended complaint renders moot a motion to dismiss addressed to the original complaint. The Plaintiff filed a First Amended Complaint on March 24, 2025. This was almost four months after the Defendants filed their Motion to Dismiss. The Plaintiff filed the First Amended Complaint without obtaining the consent of the Defendants or an order from the Court in violation of Rule 15(a). Therefore, the First Amended Complaint is a nullity unless and until the Court grants her Motion to Amend. Thus, the Motion to Dismiss and Motion to Compel Arbitration are not moot.

### B. Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff has the burden of establishing a prima facie case by presenting enough evidence to withstand a motion for directed verdict." *United States ex rel. Bibby v. Mortgage Invs. Corp.*, 987 F.3d 1340, 1356 (11th Cir. 2021) (citation omitted). In evaluating a plaintiff's case, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Morris v.*

*SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988) (citation omitted). Where the defendant contests the allegations in the complaint through affidavits, "the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1360 (11th Cir. 2006) (citation omitted). "And where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must draw all reasonable inferences in the plaintiff's favor." *Mortgage Invs.*, 987 F.3d at 1356 (quotation marks omitted).

A federal court sitting in diversity undertakes a two-step inquiry to determine whether it has personal jurisdiction over a non-resident defendant: "the exercise of jurisdiction must (1) be appropriate under the forum state's long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257–58 (11th Cir. 2010) (quotation marks and citation omitted). "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Id.* at 1258 (quotation marks and citation omitted). Thus, this Court must interpret and apply Georgia's long-arm statute in the same manner as the Georgia Supreme

Court. The statute, codified at O.C.G.A. § 9-10-91, confers specific personal jurisdiction over an out-of-state defendant if, among other things, he "[t]ransacts any business within [Georgia][.]" O.C.G.A. § 9-10-91(1); *see also Cooper Tire & Rubber Co. v. McCall*, 312 Ga. 422, 429 (2021). The Georgia Supreme Court has held:

> [J]urisdiction exists on the basis of transacting business in [Georgia] if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice."

*Amerireach.com v. Walker*, 290 Ga. 261, 269 (2011) (quotation marks and citation omitted). However, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 518 (2006) (quotation marks and citation omitted).

If a state's long-arm statute is satisfied, the next step is to assess personal jurisdiction under constitutional due process principles. A court must ensure that "the defendant has 'certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (alteration omitted) (quoting *Int'l Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945)). The minimum-contacts inquiry "ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the 'random, fortuitous, or attenuated' contacts it makes by interacting with other persons affiliated with the state." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

In Georgia, courts have general jurisdiction over corporations considered "at home" in the state, and they have specific jurisdiction over "nonresident" corporations that fall under the state's long-arm statute. *Cooper Tire & Rubber Co. v. McCall*, 312 Ga. 422, 427, 428–29 (2021). None of the Defendants are at home in Georgia, defined as a corporation registered and authorized to do business in the state. *Id.* at 430–31. Instead, they qualify as nonresident corporations, defined as a corporation "not organized or existing under the laws of this state and [ ] not authorized to do or transact business in this state at the time a claim or cause of action under Code Section 9-10-91 arises." O.C.G.A. § 9-10-90.

The Initial Complaint alleged the following: (1) "VGW actively promotes and operates internet gambling websites that target . . . Georgia citizens and conduct[s] business within" Georgia, (Compl. ¶ 9; *see also id.* ¶¶ 14, 22 (alleging substantially the same)); (2) Georgia citizens purchase packages of Gold Coins—which come with Sweep Coins—and then use the Sweep Coins to "play the games and win or lose real money," (*id.* ¶ 26); and (3) "VGW uses

targeted advertising across social networks, advertises on search engines such as Google, sponsors YouTube gambling channels and more, to entice Georgia citizens to gamble on their platforms," (*id.* ¶ 90). These allegations are insufficient to establish either general or specific jurisdiction over the Defendants.

To establish general jurisdiction over a foreign corporation, the plaintiff must show that the defendant's contacts with the forum state are "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). A corporation is generally "at home" only in the state where it is incorporated and has its principal place of business. *Daimler AG v. Bauman,* 571 U.S. 117, 136 (2014). Here, none of the VGW Group entities is "at home" in Georgia: VGW Luckyland is a Delaware corporation with its principal place of business in Delaware; VGW Malta and VGW GP are Maltese limited companies with their principal places of business in Malta; and VGW Holdings is an Australian limited company with its principal place of business in Australia.

The Complaint alleges no facts that would establish VGW Group purposefully availed itself of the privilege of conducting business in Georgia. Courts routinely reject "vague and conclusory allegations" as insufficient to "establish . . . personal jurisdiction." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318

(11th Cir. 2006) (citation omitted). The Plaintiff does not allege any facts to support that VGW Group "conducts business" or "actively operate[s] and market[s] internet gambling websites" in Georgia. (Compl. ¶¶ 2–5). All the Plaintiff alleges is that VGW Group "operates internet gambling websites" that are available to users in Georgia. (*Id.* ¶ 9.) This is insufficient. The mere fact that the games are available for play in Georgia does not mean VGW Group has purposefully availed itself of the Georgia market. *See Ekpo v. Playa Mgmt. USA, LLC*, 2022 WL 2048665, at *6 (N.D. Ga. June 7, 2022) (operation of website available in Georgia insufficient to establish jurisdiction where website did not specifically target Georgia customers); *Brannies v. Internet ROI, Inc.,* 67 F. Supp. 3d 1365, 1368–69 (S.D. Ga. 2015) (website owner's placement of advertisements on website viewable in Georgia insufficient to establish jurisdiction); *see also Goforit Ent. LLC v. Digimedia.com L.P.*, 513 F. Supp. 2d 1325, 1330 (M.D. Fla. 2007) ("[T]hat Defendants' websites are equally accessible everywhere does not establish targeting of Florida." (citations omitted)).

The Plaintiff does not identify any actions taken by VGW Group that were expressly aimed at Georgia. VGW Group does not purposefully target or direct any marketing or other business activities specifically toward Georgia residents. *See* (Cavallaro Decl., [Doc. 28-2], ¶ 8). While VGW Group benefits from users in Georgia, there are no allegations that VGW Group's games have

a Georgia-specific focus, change based on a player's residency in Georgia, or prioritize Georgia players. *See Clinton v. Montes*, 2012 WL 12886490, at *2 (C.D. Cal. July 16, 2012) ("Only where a website with national viewership and scope appeals to and profits from an audience in a particular state can the site's operators be said to have expressly aimed at that state." (citation omitted)). There are also no allegations that VGW Group attempts specifically to appeal to or actively target Georgia residents in particular. VGW Group offers the same games no matter where a player accesses them in the United States.

Furthermore, fairness and justice weigh against the exercise of jurisdiction here because VGW Group could not have "reasonably anticipate[d] being haled into court" in Georgia. *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990) ("[T]he defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there." (citations omitted)). As discussed above, none of the VGW Group entities is incorporated or has its principal place of business in Georgia, nor do they have any offices, assets, or employees in Georgia. Moreover, VGW Group structured its Terms such that VGW Group and its customers around the world, including the Plaintiff, agreed to litigate all disputes not subject to arbitration exclusively in Delaware and Malta. *See* (Cavallaro Decl., Ex. A, [Doc. 28-3], § 24.17); (Cavallaro Decl., Ex. C, [Doc. 28-5], § 24.17); (Cavallaro Decl., Ex. D, [Doc. 28-6], § 24.17).

Given the mandatory Delaware and Malta forum selection clauses, VGW Group could not have reasonably anticipated being haled into court in Georgia and every other state where its games can be accessed online. The United States Supreme Court has held:

> [A] clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions.

*Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593–94 (1991) (citation omitted). "Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (citations omitted).

The Plaintiff does not dispute that she accepted the Terms, nor does she dispute that her claims are within the scope of the forum selection clauses. She claims that she is not bound by the mandatory forum selection clauses because she allegedly opted out of them pursuant to "Clause 23." *See* (Cavallaro Decl., Ex. A, § 23.3); (Cavallaro Decl., Ex. C, § 23.3); (Cavallaro Decl., Ex. D, § 23.3). Nothing in the arbitration opt-out provision states or implies that a user may opt out of the mandatory forum selection clauses. Nor would that make any sense. By definition, the forum selection clauses—which appear in an entirely different article of the Terms (§ 24)—only apply where a user has opted out of

arbitration or where the dispute is otherwise not arbitrable. That is why the forum selection clauses state that they are "[s]ubject to clause 23." (Cavallaro Decl., Ex. A, § 24.17); (Cavallaro Decl., Ex. C, § 24.17); (Cavallaro Decl., Ex. D, § 24.17). In other words, all disputes must be arbitrated per the arbitration agreement in Section 23.2, unless the arbitration agreement does not apply because the dispute is outside the scope of the arbitration agreement or the user has validly opted out of arbitration under Section 23.3, in which case the forum selection clauses mandate that the dispute be litigated exclusively in Delaware or Malta court depending on which games are at issue. Plaintiff does not and cannot meet her "heavy burden" to invalidate the forum selection clauses, nor has she established that public-interest factors "overwhelmingly disfavor" holding her to her binding forum selection agreements. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 66 n.8, 67 (2013).

Where, as here, a forum selection clause covers all claims "arising out of" or "in connection with" the parties' agreement, the clause covers "all causes of action arising directly or indirectly from the business relationship evidenced by the contract," including statutory claims. *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987) (per curiam). This language is broad enough to include the Plaintiff's derivative claims against VGW Holdings. Plaintiff's other arguments against enforcement of the forum selection clauses are without merit for the reasons set forth in the Defendant's Reply. *See* (Defs.'

Reply Br. in Support of Defs.' Mot. to Dismiss, [Doc. 34]).

## C. Motion to Compel Arbitration

On a motion to compel arbitration, a court undertakes a two-step inquiry to determine (1) whether the parties agreed to arbitrate the dispute in question and, if they did, (2) whether legal constraints external to their agreement foreclose arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Under the first step, the Federal Arbitration Act ("FAA") instructs that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 626 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). The FAA "embodies a liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (citation and quotation marks omitted).

Under the second step, the FAA provides that an arbitration clause for a "contract evidencing a transaction involving commerce" is enforceable except where "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In other words, an arbitration agreement is "on an equal footing with other contracts" and is enforceable unless a "generally applicable principle of *contract* law" indicates otherwise. *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1231 (11th Cir. 2012) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)); *Caley*, 428 F.3d at 1371 (citation

13

omitted). Courts look to state contract law to determine whether the arbitration agreement is unenforceable as a matter of contract law. *See Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *Caley*, 428 F.3d at 1368).

The party seeking to compel arbitration carries the burden of demonstrating that a valid agreement to arbitrate exists. *Id.* at 1330 (quoting *Jackson v. Easters*, 190 Ga. App. 713, 714 (1989)). If the moving party satisfies both steps, the traditional rule is that a court may compel arbitration and either stay or dismiss the suit.[3] *Lambert v. Austin Indus.*, 544 F.3d 1192, 1195 (11th Cir. 2008). However, as the Supreme Court recently held, the FAA "compels the court to stay the proceeding" if one of the parties requests a stay. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); 9 U.S.C. § 3 (providing that courts "shall" upon request stay the proceeding until the arbitration "has been had in accordance with the terms of the [arbitration] agreement").

VGW specializes in the development and publication of free-to-play online casino-themed social games, including on platforms called Luckyland

---

[3] District courts in the Eleventh Circuit have generally treated motions to compel arbitration as equivalent to motions to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). *See, e.g.*, *Coleman v. Dep't Store Nat'l Bank: DSNB Macy's*, 2022 WL 18777575, at *6 (N.D. Ga. Oct. 13, 2022), *report and recommendation adopted*, 2022 WL 18777528, at *1 (N.D. Ga. Nov. 3, 2022); *Stuckey v. Brookdale Emp. Servs., LLC*, 2022 WL 1156962, at *1 (N.D. Ala. Apr. 19, 2022); *de la Riva v. SunTrust Bank*, 2022 WL 3681998, at *8 (S.D. Fla. Apr. 14, 2022).

Slots and Global Poker. Plaintiff alleges she registered accounts with, played, and spent money on Luckyland Slots and Global Poker between September 7 and December 3, 2023. (Compl. ¶ 11). Before a user can play any games, VGW requires the user to register an account. (Cavallaro Decl. ¶ 10). As part of the account registration process, a user must affirmatively accept the Luckyland Slots Terms of Service and Global Poker Terms and Conditions, as applicable. (*Id.* ¶ 11). Users cannot register or play any of the games unless they affirmatively accept the Terms and all updates. (*Id.* ¶¶ 11–12). Plaintiff does not dispute that she accepted the Terms. In fact, Plaintiff tacitly concedes she accepted the Terms because she alleges that she opted out of the arbitration clauses "in accordance with the Terms." (Compl. ¶ 12). VGW's records confirm Plaintiff accepted the November 1, 2023, Terms, opted out of arbitration in the November 1, 2023, Terms in late November 2023, and then accepted the December 2023 Terms in January 2024 without opting out of arbitration under those later Terms. *See* (Cavallaro Decl. ¶¶ 23–25, 36–38).

The December 2023 Luckyland Slots Terms of Service and Global Poker Terms and Conditions (hereafter, collectively, "the Terms") are identical in all material respects. The Terms include a clear and conspicuous warning at the top that states:

> These Terms [] form a binding legal agreement between you and us and apply to your use of any of our Games or our Platform in any way, through any electronic device (web, mobile, tablet or any other device).

> PLEASE NOTE THAT THESE TERMS [] INCLUDE A
> PROVISION WAIVING THE RIGHT TO PURSUE ANY GROUP OR
> REPRESENTATIVE CLAIM AND REQUIRING
> YOU TO PURSUE PAST, PENDING, AND FUTURE DISPUTES
> BETWEEN YOU AND US THROUGH INDIVIDUAL
> ARBITRATION UNLESS YOU OPT OUT WITHIN THE
> SPECIFIED TIME FRAME [30 DAYS FROM ACCEPTANCE OF
> THE TERMS]. SEE CLAUSE 24 FOR MORE INFORMATION.

(Cavallaro Decl., Ex. B, [Doc. 28-4], at 1)

The Terms include an arbitration agreement, which appears in a separate standalone section titled "DISPUTE RESOLUTION AND AGREEMENT TOARBITRATE ON AN INDIVIDUAL BASIS." (*Id.* § 24). The arbitration agreement states:

> We Both Agree To Arbitrate. By agreeing to these Terms of
> Service, and to the extent permitted by applicable law, you and VGW
> Group each and both agree to resolve any Disputes – including any
> Dispute concerning the enforceability, validity, scope or severability
> of this agreement to arbitrate – through final and binding arbitration
> as discussed herein.

(*Id.* § 24.2). The arbitration agreement broadly defines "Disputes" as "all past, present and future disputes, claims or causes of action between you and VGW Group arising out of or relating to these Terms [], the Platform and Games, the formation of these Terms [] or any other dispute between you and VGW Group . . ., whether arising prior to or after your agreement to [the Terms]." (*Id.* § 24).

The Federal Arbitration Act reflects a "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quotation marks and citation omitted), and requires courts to compel

16

arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue," 9 U.S.C. § 4; *see also American Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) ("[C]ourts must rigorously enforce arbitration agreements according to their terms." (quotation omitted)). As the party opposing arbitration, the Plaintiff bears the burden of disproving she agreed to arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (citation omitted); *Cochran v. Penn Mut. Life Ins. Co.,* 2020 WL 13328617, at *6 (N.D. Ga. 2020), *aff'd*, 35 F.4th 1310 (11th Cir. 2022). In evaluating a motion to compel arbitration, courts may consider declarations. *Samadi v. MBNA Am. Bank, N.A.,* 178 F. App'x 863, 866 (11th Cir. 2006) (per curiam). Plaintiff agreed to arbitration with VGW under the JAMS Rules and delegated to the arbitrator all issues regarding the arbitrability of her claims, including the enforceability of the arbitration agreement as to her claims in this case. Accordingly, Plaintiff's claims against VGW Luckyland and VGW GP must be compelled to arbitration, pursuant to the delegation clauses in the arbitration agreements and the incorporated JAMS Rules.

### D. Motion for Leave to Amend

Rule 15 governs whether the Plaintiff may amend her Complaint. According to Rule 15, "[a] party may amend its pleading once as a matter of course" within twenty-one days of service of that pleading, a responsive pleading, or a motion under Rule 12(b), (e), or (f). FED. R. CIV. P. 15(a)(1). When

a party is not entitled to amend its pleading as a matter of course, it must obtain the opposing party's consent or the court's permission to file an amendment. FED. R. CIV. P. 15(a)(2). Rule 15(a)(2) provides that a court should "freely" give leave to amend a pleading "when justice so requires." *Id.* This decision is discretionary, but the Eleventh Circuit has explained that "district courts should generally exercise their discretion in favor of allowing amendments to reach the merits of a dispute." *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1000 (11th Cir. 2021) (citation omitted). Generally, "where a more carefully drafted complaint might state a claim, a plaintiff must be given *at least one* chance to amend the complaint before the district court dismisses the action with prejudice." *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022) (citation omitted). District courts may deny leave to amend, however, where there is substantial ground for doing so, such as "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Id.* (quotation marks and citation omitted).

### 1. Undue Delay & Prejudice

The Defendants argue that the Plaintiff's request for leave is in appropriate because (1) it comes with undue delay, as the Plaintiff had the

opportunity to timely incorporate the information she now proposes to belatedly add, and (2) it would be unduly prejudicial if granted, as it will force the Defendants to incur additional fees for a "do-over" round of briefing. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Leave to Amend, [Doc. 38], at 7–8.)

The Court declines to deny leave to amend on either of these grounds, in light of the liberal standard for allowing amendments and the discretion afforded courts on this issue. This case is still in the early stages of litigation: this is only the Plaintiff's first proposed amendment, and the Court has not yet issued a scheduling order. Moreover, at the time that the Plaintiff sought leave, the Court had not yet ruled on the Defendants' first motion to dismiss. Thus, the Court finds that the Plaintiff's requested amendment is not overly late, prejudicial, or unreasonable and that this case can be fairly characterized as early in the stages of litigation.

### 2. Futility

The Defendants argue that the proposed amendment is futile. A proposed amendment is futile if the amended complaint "would still be properly dismissed or be immediately subject to summary judgment for the defendant." *United States ex rel. Crutcher v. First Guar. Mortg. Corp.*, 2023 WL 4034197, at *4 (N.D. Ga. June 15, 2023) (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)). "If a proposed amendment is not clearly futile, then denial of leave to amend is improper." *Id.* at *4 (quotation marks

and citation omitted). "The burden falls on the party opposing amendment to establish futility." *Id.* (citation omitted).

Here, the Defendants' casino gaming websites invite users to play certain online games in the hopes of winning virtual and real prizes. *See, e.g.*, (Compl. ¶ 26; Proposed 1st Am. Compl., [Doc. 36], ¶¶ 99–101, 127.) Accordingly, the Court must now assess the level of interactivity and commercial nature of the websites. For the reasons set forth above, the allegations in the Initial Complaint were insufficient to confer personal jurisdiction. The proposed First Amended Complaint contains additional allegations, including: (1) "VGW's websites . . . are used simultaneously for commercial transactions—in the form of depositing funds, wagering/gambling, and redeeming funds—and also for exchanging information with VGW's host computers and servers in the form of playing casino games," (Proposed 1st Am. Compl. ¶ 33); (2) "VGW has systematically and continually advertised the Chumba gambling site in the Atlanta Journal Constitution," (*id.* ¶ 39); (3) VGW "verifies" that its users "register" with IP addresses, drivers' licenses, and bank accounts that geographically match the states where VGW claims it is allowed to operate, including Georgia, (*id.* ¶¶ 42–45; *see also id.* ¶¶ 46, 56 (alleging that VGW "continually monitors" users' IP addresses to ensure they fall within approved locations)); (4) Georgia citizens who request Sweep Coins via mail must do so "from a physical location in Georgia" or "the letters will be

20

automatically rejected," (*id.* ¶ 50); (4) "VGW acknowledges that it has conducted gambling transactions and purchases between at least 100 Georgia citizens and received at least $5,000,000 from [ ] Georgia citizens through these website transactions," (*id.* ¶ 52).

Taking the allegations in the proposed amendment as true, the Court concludes that the additional allegations are insufficient to support personal jurisdiction of the Defendants. The additional allegations are nothing more than conditions that must be complied with in order for anyone to participate in the Defendants' games. The conditions of participation appear to be driven by the Defendants' business plan to offer participation in the games only to residents of states where the games are legal, and not in the handful of states that have held that the games are illegal gambling operations. Participation in a nationwide advertising campaign does not constitute transacting business in Georgia or targeting Georgia residents.

Furthermore, a defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Waite*, 901 F.3d at 1312 (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The minimum-contacts inquiry "ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the 'random, fortuitous, or attenuated' contacts it makes by interacting

21

with other persons affiliated with the state." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

As discussed above, the Plaintiff agreed to the Defendants' Terms which included mandatory forum selection clauses. In doing so, she agreed to litigate any claims arising out her interaction with the Defendants' games in the courts of Delaware and Malta. In opposing the Motion for Leave to Amend, the Defendants argue that the proposed amended complaint does not address the forum selection clause issues at all, much less include allegations that would rebut VGW Group's showing that the mandatory forum selection clauses must be enforced under long-settled Supreme Court and Eleventh Circuit precedent. In her Reply, the Plaintiff does not address this argument at all. The Court finds that allowing the filing of the First Amended Complaint would be futile because of the valid forum selection clauses in the Defendants' Terms.

Furthermore, as explained above, the Court is granting Defendants VGW Luckyland and VGW GP's Motion to Compel Arbitration. The Plaintiff's proposed First Amended Complaint does not alter this conclusion, nor does she successfully articulate any reason why the arbitration clause is unenforceable on its face. She does argue that the arbitration clause is void because it is part of a void gambling contract, (Pl.'s Am. Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, [Doc. 31], at 10), but the cases she relies on for this proposition are inapposite; they all concern instances in which the designated arbitrator was

unavailable,[4] which is not the case here. Accordingly, this case would still be subject to arbitration under the proposed First Amended Complaint, and allowing amendment would be futile.

For these reasons, the Court denies the Plaintiff's Motion for Leave to Amend to the extent her First Amended Complaint includes claims against VGW Luckyland and VGW GP.

### III.    Conclusion

For the reasons set forth above, Defendants VGW Holdings Limited, VGW Malta Limited, VGW Luckyland Inc., and VGW GP Limited's Motion to Dismiss [Doc. 27] is GRANTED. The Defendants VGW Luckyland Inc. and VGW GP's Motion to Compel Arbitration [Doc. 28] is GRANTED. Plaintiff's Motion for Leave to Amend [Doc. 37] is DENIED. The Court DENIES as moot Plaintiff's Motion to Certify Class [Doc. 21].

SO ORDERED, this ____14th____ day of July, 2025.


                                            THOMAS W. THRASH, JR.
                                            United States District Judge

---

[4] *See Flagg v. First Premier Bank*, 644 F. App'x 893, 894 (11th Cir. 2016) (per curiam); *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1335 (11th Cir. 2016); *Parnell v. W. Sky Fin., LLC*, 664 F. App'x 841, 843 (11th Cir. 2016) (per curiam); *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1348 (11th Cir. 2014).